## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DONALD DWAYNE WHATLEY,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | ) **CIV. ACT. NO. 1:19-cv-938-TFM-N** |
| | ) |
| **JOHN Q. HAMM,**[1] | ) |
| **Commissioner, Alabama Department** | ) |
| **of Corrections** | ) |
| | ) |
| **Respondent.** | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Petitioner Donald Dwayne Whatley's *Motion to Alter or Amend the Judgment* (Doc. 23, filed 9/28/22). Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Petitioner seeks reconsideration of this Court's Memorandum Opinion and Order (Doc. 21) denying his Amended Petition for Writ of Habeas Corpus (Doc. 9). The State filed its response in opposition of the motion. *See* Doc. 29. Upon thorough review of the motion, the response, and the relevant law, the motion (Doc. 23) is **DENIED** for the reasons discussed below.

## I.   RELEVANT PROCEDURAL BACKGROUND

Whatley filed his original Petition for Writ of Habeas Corpus on November 7, 2019, and later amended that petition on February 18, 2020. Doc. 1; Doc. 9. He raised several grounds for relief, including (as relevant here) that he suffered constitutional violations in the Alabama state courts arising from (1) how his jury was selected and instructed, (2) how certain evidence was admitted and evaluated at his trial, and (3) how his trial counsel represented him.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), John Q. Hamm is substituted in his official capacity and replaces the former Commissioner Jefferson Dunn.

On August 31, 2022, this Court entered a 196-page Memorandum Opinion and Order (Doc. 21) and Judgment (Doc. 22) denying Whatley's Amended Petition for Writ of Habeas Corpus in its entirety. The Court also denied Whatley's request for an evidentiary hearing and declined to issue a Certificate of Appealability.

Whatley filed the instant Motion to Alter or Amend the Judgment (Doc. 23) on September 28, 2022. After receiving an enlargement of time from this Court (Doc. 28), the State filed its response (Doc. 29) on December 5, 2022. Whatley's motion and the State's response are now before the Court for a ruling.

## II.    LEGAL STANDARD

Whatley's motion for reconsideration is up against two weighty legal standards. First, Whatley still faces the original task of showing he is entitled to relief under 28 U.S.C. § 2254, the habeas statute under which he first sought relief. To do this Whatley needs to show that this Court was wrong to dismiss his habeas petition and that, in fact, the state court's ruling on his federal claims was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted). As explained in this Court's detailed Opinion and Order, Whatley did not meet this burden, so his habeas petition was denied.

Now Whatley faces an added hurdle – the very limited scope of relief offered by Federal Rule of Civil Procedure 59(e). "'The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.'" *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)) (alteration in original). "'[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" *Id*. at 1343 (quoting *Michael*

*Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)) (alteration in original). Where a Rule 59(e) motion does nothing more than express disagreement with the district court's treatment of certain facts or conclusions of law, it should be denied. *See Linet*, 408 F.3d at 763; *see also Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (concluding the district court did not err in denying a Rule 59(e) motion where the movant "did nothing but ask the district court to reexamine an unfavorable ruling").

### III.   ANALYSIS

In the Court's view, most of Whatley's motion is outside the scope of Rule 59(e) because it largely rehashes arguments made in his previous filings. The introductory section, headings, and even major parts of the legal argument are duplicative of his habeas petition, making it difficult to tell exactly what Whatley wants this Court to reexamine.[2] Putting that aside, even where Whatley does raise novel issues, those issues do not come from new evidence, nor do they constitute "manifest errors of law or fact", as required by Rule 59(e). For these reasons, Whatley's motion is due to be denied

As noted, the significant repetition between the habeas petition and the Rule 59(e) motion makes it hard to differentiate Whatley's alleged points of error from the arguments he already made. In this Court's best understanding, Whatley's motion seeks review of the following aspects of the Opinion and Order:

1.   Whether Whatley was entitled to relief on his *Batson* claim.

---

[2] This issue is explained in more detail throughout this Order. While the Court certainly understands the time pressures practitioners face, the copy-and-paste technique used too frequently throughout Whatley's motion is remarkable. Rule 59(e) is intended to correct manifest errors of law or fact, or to address any newly discovered evidence, not to revisit legal argument the Court already considered. Sifting through pages of caselaw and legal argument that are stripped verbatim from a previous filing is a highly unproductive use of already-scarce judicial resources.

2. Whether Whatley was entitled to relief on his penalty-phase ineffective assistance of counsel claim.

3. Whether Whatley was entitled to relief on his claim that evidence of future dangerousness was improperly admitted during the penalty phase of his trial.

4. Whether Whatley was entitled to relief on his claim that the prosecutor improperly argued to the sentencing judge that the victim's family wanted Whatley to be sentenced to death.

5. Whether Whatley was entitled to relief on his claim that the jury was improperly told that Whatley's case would be reviewed on appeal.

6. Whether Whatley was entitled to relief on his claim that the trial court erroneously refused to instruct the jury on lesser included offenses.

7. Whether Whatley was entitled to an evidentiary hearing on his habeas claims.

8. Whether this Court should have issued a Certificate of Appealability on any of Whatley's habeas claims.

After a thorough review of each of these issues, this Court finds Whatley is not entitled to relief under Federal Rule of Civil Procedure 59(e). Whatley does not suggest there is any newly discovered evidence this Court should consider, nor has he demonstrated any manifest error of law or fact that supports changing this Court's ruling. *See Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022) (acknowledging that the only grounds for Rule 59(e) relief are newly discovered evidence or manifest errors of law or fact).

**A.      Whatley has not shown any manifest error of law or fact that warrants modifying this Court's denial of his *Batson*-related claims.**

Whatley argued in his habeas petition that the jury selection process at his trial was done in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986), and he reiterates much of that argument here. *Compare* Doc. 9, ¶¶ 2, 25-115 *with* Doc. 23, pp. 1, 4-25. Whatley now also says this Court erred in finding no violation of 28 U.S.C. § 2254(d)(1) because he still staunchly contends that the Alabama courts' adjudication of his *Batson* claims was contrary

to or an unreasonable application of clearly established federal law.  Doc. 23, pp. 5-9. Whatley also maintains the Alabama Court of Criminal Appeals ("ACCA"), and now this Court in turn, unreasonably considered the facts in his case in violation of 28 U.S.C. § 2254(d)(2). Doc. 23, pp. 5, 9-26. As explained below, Whatley's arguments are unpersuasive.

   i.   **The Alabama courts' rejection of Whatley's *Batson* claims was not an incorrect or unreasonable application of *Batson* and its progeny.**

Whatley's Rule 59(e) motion recommences his attack on the legal standard the ACCA applied to his *Batson* claims. Just like he did in his habeas petition, Whatley argues again that "the ACCA explicitly refused to consider the totality of the circumstances, focusing instead on whether it could identify a single race neutral justification for each struck juror."  *Compare* Doc. 9, ¶¶ 27-30 *with* Doc. 23, p. 5.  He cites to *Batson*, *Snyder*, and *Miller-El II*, all of which he relied upon in his habeas petition.[3]  Doc. 23, pp. 5-9. This Court already thoroughly considered these arguments and decided against Whatley.  Doc. 21, pp. 20-27. To the extent Whatley's motion simply echoes what was raised in his habeas petition, it is not within the scope of Rule 59(e).  *Compare* Doc. 23, pp. 5-6 *with* Doc. 9, ¶¶ 27-28.

Perhaps to avoid Rule 59(e)'s prohibition on relitigating old issues, Whatley suggests this Court misunderstood his *Batson* argument:

> This Court misapprehended Mr. Whatley's contention that the ACCA failed to "consider all relevant circumstances," *Batson*, 476 U.S. at 96, when it suggested that petitioner's arguments are based only on "the fact that the state court did not mention or explicitly discuss these circumstances in its opinion." (Doc. 21, at 23.) … [P]etitioner's argument here is based not on what the ACCA did not say but rather on what it *did* say. The ACCA explicitly stated that it was not considering anything other than a single justification proffered by the prosecution. *Whatley*, 146 So. 3d at 454.

---

[3] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986); *Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203, 170 L.Ed.2d 175 (2008); *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317, 162 L.Ed.2d 196 (2005).

Doc. 23, pp. 5-6. Regardless of how it is articulated though, Whatley's argument is really just a restatement of his original contention—that the ACCA violated *Batson* and its progeny by making the following statement in its ruling:

> As long as any one reason given by the prosecutor for the strike of a potential juror is sufficiently race-neutral, a determination concerning any other reason given need not be made.

Doc. 23, p. 6 (quoting *Whatley v. State*, 146 So.3d 437, 454 (Ala. Crim. App. 2010)). To Whatley, this single statement amounts to the ACCA having "explicitly refused to consider the totality of the circumstances" in violation of *Batson* and its progeny.  Doc. 23, p. 5.

This Court disagreed and explained why in its Opinion and Order.  Doc. 21, pp. 20-27. Whatley now accuses this Court of "imagin[ing] additional reasoning that 'could have supported' [the ACCA's] decision" and rejects the idea that the ACCA "implicitly considered" every reason given by the State for its peremptory strikes.  Doc. 23, pp. 6-7. Whatley's allegations of error are wrong.

The Court's Opinion and Order does not "imagine[] additional reasoning that could have supported" the ACCA's decision, but instead references law which explains why the ACCA's decision was not unreasonable or contrary to *Snyder* and *Batson*, and further explains how the decision was supported by the record facts. Namely, that the articulation of one justified strike reason is sufficient to support a *Batson* ruling in this Circuit, without the ACCA's discussion of any other reasons provided (especially considering the facts laid out within the decision).  Doc. 21, n. 11 (gathering Eleventh Circuit cases for the proposition that a state court *Batson* analysis does not have to make elaborate factual findings of every step)*; see also Felkner v. Jackson*, 562 U.S. 594, 598, 131 S. Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted)) ("On federal

habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'").

Whatley disputes this reasoning, contending that the United States Supreme Court in *Flowers v. Mississippi*, 139 S. Ct. 2228, 2244, 204 L.Ed.2d 638 (2019), "has now made clear that, rather than the mixed motive test: The ultimate inquiry is whether the State was motivated in substantial part by discriminatory intent" Doc. 23 at p. 7, n. 3. Whatley forgets though that federal habeas review of state court decisions are measured against the precedents of the Supreme Court "as of the time the state court renders its decision." *Cullen v. Pinholster*, 563 U.S. 170, 182, 131 S. Ct. 1388, 179 L.Ed.2d 557 (2011) (internal quotation omitted). *Flowers* was not the law when Whatley's case was decided.

Furthermore, Whatley ignores the longstanding principle that discriminatory intent of a strike is within the province of the trial judge and is due deference:

> "The trial judge's assessment of the prosecutor's credibility is often important. The Court has explained that "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." *Snyder*, 552 U.S. at 477, 128 S. Ct. 1203 (quotation altered). "We have recognized that these determinations of credibility and demeanor lie peculiarly within a trial judge's province." *Ibid*. (internal quotation marks omitted). The trial judge must determine whether the prosecutor's proffered reasons are the actual reasons, or whether the proffered reasons are pretextual and the prosecutor instead exercised peremptory strikes on the basis of race. The ultimate inquiry is whether the State was "motivated in substantial part by discriminatory intent." *Foster*, 578 U. S., at 513, 136 S. Ct., at 1754 (internal quotation marks omitted).

*Flowers*, 139 S. Ct. at 2243-44. Here, the record shows the trial court held a *Batson* hearing where the State provided race-neutral reasons for its strikes. Whatley argued (orally and through briefs) these reasons were pretextual. The State responded and identified at least one reason for each strike which was consistent throughout *voir dire* for striking jurors. The trial court ruled that the strikes were constitutional, and *Flowers* recognizes that those decisions are afforded deference. *See also*

*Wallace v. Morrison*, 87 F.3d 1271 (11th Cir. 1996), *cert. denied*, 519 U.S. 1044, 117 S. Ct. 616 (1996) (After the party raising the *Batson* claim has established a prima facie case that discrimination was a substantial part of the motivation for a strike, the party that exercised the strike may raise the affirmative defense that the strike would have been exercised solely for race-neutral reasons.). Whatley has given this Court no reason to upend the deference due to the trial judge.

In this Court's view, Whatley "strains credulity"—to use his own phrase—by doggedly maintaining the ACCA failed to consider the totality of the circumstances. This Court already engaged in an in-depth analysis demonstrating that the ACCA *did* consider the totality of the circumstances, despite what its brief recitation of the legal standard may have suggested.  Doc. 23, pp. 24-27. To start with, Whatley raised his *Batson* issues before the ACCA back in 2010 as part of his direct appeal, which caused the ACCA to remand the case for a *Batson* hearing in the first place. *See Whatley*, 146 So.3d at 447 (acknowledging Whatley's claims of historical discrimination, problematic striking of black veniremembers, and disparate treatment of potential jurors). After the case came back from the trial court, the ACCA continued analyzing Whatley's *Batson* challenges in sharp detail:

- The ACCA acknowledged *Batson*'s standard for jury selection, including that "all relevant circumstances" must be considered.

- The ACCA examined the evidence related to the State's strike pattern.

- The ACCA acknowledged every reason the State gave for striking the jurors at issue (none of which were based on race).

- The ACCA highlighted the testimony from Whatley's trial counsel during the *Batson* hearing that "[he] did not see that there was a basis for a *Batson* challenge or [he] would have done it."

- The ACCA acknowledged that, after the State articulated its reasons for the strikes, "the court must evaluate the credibility of the stated justifications based on the evidence placed before it."

- After analyzing the individual juror strikes and giving deference to the trial court's findings that there was no history of discrimination in the State's attorney's office, the ACCA held "based on the totality of the relevant factors" that there was no *Batson* violation.

Doc. 21, p. 24; *Whatley*, 146 So.3d at 447-448, 452-457. Whatley casts aside this wide-ranging analysis and somehow still accuses the ACCA of not considering all the circumstances of his jury selection. This Court cannot agree.

Whatley claims this Court's reasoning is contrary to *Wilson v. Sellers*, 138 S. Ct. 1188, 200 L.Ed.2d 530 (2018), but *Wilson* is not applicable in this case.  Doc. 23, p. 6. In *Wilson*, the United States Supreme Court addressed a circuit split about whether a federal habeas court reviewing a summary state court ruling should either (1) examine what arguments "could have supported" the state court decision or (2) "look through" the summary state court ruling to the last reasoned state court ruling and assume the summary ruling rested on the same grounds. *Id*. at 1193. The *Wilson* court said the "look through" approach was the correct one:

> "We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."

*Id*. at 1192.

It is not clear how Whatley thinks *Wilson* applies to his case. *Wilson* involved a state appellate court's summary dismissal of the petitioner's federal claims without giving any supporting rationale. Whatley's case is different. Both the trial court and the Alabama appellate court gave reasoning for their rulings against Whatley. Moreover, contrary to Whatley's urging, *Wilson* does not require a federal habeas court to look at the state court's decision in a vacuum. The Eleventh Circuit Court of Appeals has held, both before and after *Wilson*, that a federal habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Sec'y, Fla.*

*Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2002) (citing *Pye v. Warden, Georgia Diagnostic*

*Prison*, 50 F.4th 1025, 1036 (11th Cir. 2022) (en banc) (collecting cases)). Just recently, the

Eleventh Circuit reiterated this legal standard:

> Neither *McGahee* nor any other of our precedents requires state courts to show their
> work in *Batson* decisions by mentioning every relevant circumstance. *See Lee*, 726
> F.3d at 1219 ("The state court's unreasonable application of *Batson*[in *McGahee*]
> was not the failure to mention, but the failure to even implicitly consider [relevant
> circumstances.]"). <u>A petitioner must do more than prove that the state court failed
> to "mention" evidence in order to prove that the state court failed to consider that
> evidence.</u> *Id.* at 1223. This "no-grading-papers, anti-flyspecking rule" stems from
> "'the presumption that state courts know and follow the law' and [section
> 2254(d)'s] 'highly deferential standard for evaluating state-court rulings, which
> demands that state-court decisions be given the benefit of the doubt.'" *Meders v.
> Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1350 (11th Cir. 2019) (quoting
> *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)); *see also Pye*, 50 F.4th at 1036–38;
> *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1311–12 (11th Cir. 2016) ("[W]e
> will not presume that a state court misapplied federal law, and absent indication to
> the contrary will assume that state courts do under-stand clearly established Federal
> law as determined by the Supreme Court of the United States."(internal quotation
> marks and citation omitted)).

*King v. Warden, Georgia Diagnostic Prison*, 69 F.4th 856, 869 (11th Cir. 2023) (emphasis added).

Under this reasoning, the Court sees no error in its analysis of Whatley's *Batson* claims. Regardless

of whether the Alabama courts "show[ed] their work", the record supports this Court's conclusion

that they did consider the relevant circumstances in denying Whatley's *Batson* claims.

In a brief footnote, Whatley also challenges this Court's reliance on *Lee v. Comm'r, Ala.

Dep't of Corr.*, 726 F.3d 1172 (11th Cir. 2013) because "*Lee* did not address a state court's explicit

refusal to consider relevant evidence of discrimination." Doc. 23, p. 6 at n. 1. This argument is

wrong firstly because the ACCA did not refuse, but in fact did, consider the totality of the

circumstances in deciding that no *Batson* violation occurred, a point this Court has extensively

analyzed. Second, *Lee* is factually analogous, regardless of what Whatley says. Just as this Court

was tasked to do, the *Lee* court examined a state appellate court's plain error review of several

*Batson* claims. In *Lee*, like here, the appellate court recounted how the *Batson* challenge was raised; reproduced in full the prosecutor's race-neutral reasons for striking each black veniremember; considered the veniremembers' *voir dire* answers; analyzed the State's strike pattern; addressed the alleged history of discrimination in the prosecutor's office; evaluated in detail the strike challenges for individual veniremembers; and took into account how the petitioner's trial attorney had addressed (or not) any perceived *Batson* issues at trial. Even this quick comparison shows that Whatley's case and *Lee* are sufficiently alike to support this Court's reliance on *Lee* in the Opinion and Order. Furthermore, despite Whatley's passing attempt to distinguish it, *Lee* is still good law in this circuit, and it supports dismissal of Whatley's *Batson* claim. *See King,* 69 F.4th at 868 (citing *Lee* for *Batson* standard); *Pye,* 50 F.4th at 1036 (citing *Lee* for the proposition that a state court opinion is not required to mention every relevant fact or argument for AEDPA deference to apply).

To summarize, Whatley has still not persuaded this Court that the Alabama courts violated *Batson* and its progeny in denying his *Baston* claims. Whatley's request for Rule 59(e) relief based on this argument is denied.

### ii.  The Alabama courts did not unreasonably adjudicate of the facts surrounding Whatley's *Batson* claims.

Whatley's next argument is that this Court ignored or misconstrued some of the evidence surrounding his *Batson* claims.  Doc. 23, p. 9. Whatley's points of error relate to two issues: (1) the alleged history of discrimination in the State's attorney's office and (2) the evidence surrounding the State's strikes of several individual jurors.  Doc. 23, pp. 9-26.  None of the issues Whatley raises amounts to a manifest error of law or fact that would warrant relief under Rule 59(e).

### a.  <u>History of Discrimination</u>

In his habeas petition, Whatley claimed the State had a history of discriminatory jury selection that necessarily suggested discrimination occurred during his jury selection.  Doc. 9, ¶¶

29, 33. To demonstrate the alleged history of discrimination, Whatley cited a series of cases from the 1980s and 1990s which the United States Supreme Court identified as having race-related problems.  Doc. 9, p. 11 at n. 2.  He also cited two cases from 2010 and three cases from 2014 where Ashley Rich (the prosecutor in his case), or some other prosecutor in her office, allegedly had struck a large number of black potential jurors.  Doc. 9, p. 11 at n. 3; Doc. 9, p. 12. To Whatley, these cases were evidence of discrimination in his case. The Alabama courts rejected Whatley's claim, and this Court found no error in that outcome.  Doc. 21, pp. 30-31.

In analyzing the issue, this Court noted: "The cases cited by Whatley in the state court were all tried prior to the prosecutor, Ashley Rich, assuming office in 2011, a fact no one disputes." Doc. 23, p. 9 (citing Doc. 21, p. 31). Whatley says this statement is incorrect because Ashley Rich worked in the Mobile District Attorney's Office for many years before becoming District Attorney, and that she did in fact work in that office during all the cases Whatley cited in support of his *Batson* challenge.  Doc. 23, p. 9.

Even so, this does not change the Court's analysis. The two cases from 2010 Whatley cited in his habeas petition, just like the cases from 2014 this Court already reviewed, did not conclude with *Batson* violations. *See Shaw v. State*, 207 So.3d 79 (Ala. Crim. App. 2014), *cert. denied* 173 S. Ct. 828 (2017) (no *Batson* violation); *Woolf v. State*, 220 So.3d 338 (Ala. Crim. App. 2014), *cert. denied* 137 S. Ct. 1821 (2017) (declining to find error in trial court's denial of *Batson* challenges); *Lane v. State*, 327 So.3d 691 (Ala. Crim. App. 2020), *cert. denied* 142 S. Ct. 126 (2021) (declining to find a *Batson* violation and rejecting the idea that statistics themselves are sufficient to support a prima facie case of racial discrimination). Whatley's clarification of Ashley Rich's employment dates does not resolve his failure to show a prima facie case of racial discrimination.

Whatley says *Miller-El v. Cockrell* (*Miller-El I*), 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d

931 (2003), commands a different result. Doc. 23, p. 10. The Court disagrees. *Miller-El I* is factually distinguishable from Whatley's case. In that case, the prosecutor's office had admitted to using a process known as a "jury shuffle" to avoid seating black jurors, and those same prosecutors had worked at the office during a time when attorneys were trained specifically on how to exclude black jury members. Critically, the evidence showed that black veniremembers had been "almost categorially excluded from jury service." *Miller-El I*, 537 U.S. at 346-347. Whatley's allegations, and the evidence before this Court, fall well short of what the *Miller-El I* court faced. Even more notably, the *Miller-El I* court was not looking at whether discrimination had in fact occurred, but rather at whether there was sufficient evidence of discrimination to justify issuance of a certificate of appealability. *Id*. at 358. *Miller-El I* does not require granting Whatley relief.

Nor does *Flowers* help Whatley's charge that the State had a problematic history of discrimination. 139 S. Ct. at 2228. First, as already explained, *Flowers* was not the law at the time Whatley's case was decided and does not impact the outcome here. *See Cullen*, 563 U.S. at 182 (federal habeas review of state court decisions are measured against the precedents of the Supreme Court "as of the time the state court renders its decision."). Second, *Flowers* is factually distinguishable just like *Miller-El I* is. At the time *Flowers* was decided, the defendant had been tried six times. There was a well-documented history of racial discrimination in those trials, even causing the Mississippi Supreme Court to remark that one of the trials presented it "with as strong a prima facie case of racial discrimination as we have ever seen in the context of a *Batson* challenge." *Id*. at 2235 (quoting *Flowers v. State*, 947 So.2d 910, 935 (2007)). Plus the discriminatory nature of Flowers's other trials was only one piece of the puzzle. The *Flowers* court was presented with several "critical facts" that suggested a *Batson* violation had occurred in his sixth trial, including overwhelming evidence of a problematic strike pattern over the course of all

six trials and "dramatically disparate questioning of black and white prospective jurors." *Id*. at 2235. These are not like Whatley's facts. Whatley has not been through other trials where he was subjected to discriminatory jury selection, and the other cases Whatley claims show that the State is discriminatory were ruled to be irrelevant or not discriminatory at all. Unlike in *Flowers* where discrimination seemed evident at every turn, both the Alabama courts and this Court have ruled that no *Batson* violation occurred in Whatley's case. Finally, Whatley's citation to *Flowers* seems somewhat misplaced. He cites *Flowers* for the expansive proposition that a prosecutor's pattern of removing black jurors in past trials is relevant even if no *Batson* violation resulted from those trials. Doc. 23, p. 10. The historical analysis in *Flowers* focused on the prosecutor's removal of black jurors in four out of five of Flowers's previous trials, not in trials concerning other defendants. While the Court agrees with Whatley that a prosecutor's history of discrimination can be relevant, his reliance on *Flowers* to support his particular claim is not persuasive.

### b.  <u>Analysis of Individual Juror Strikes</u>

Next Whatley challenges this Court's analysis of his side-by-side comparison of black jurors who were struck with white jurors who were allowed to serve.  Doc. 23, pp. 10-27. He says this Court's conclusions "involve manifest errors of fact and law and should be reconsidered.  Doc. 23, p. 9.

As a reminder, Whatley's habeas petition asserted that the prosecutor's peremptory strikes violated *Batson* for multiple reasons, including that the explanations for the strikes were pretextual, that they reflected race-based disparate treatment of prospective jurors, and that they mischaracterized the testimony of black prospective jurors. Whatley further raised questions about the prosecutor's supposed abandonment of her initial strike justifications and her failure to question jurors about alleged areas of concern, all which Whatley said evidenced a *Batson* violation.  Doc.

9, pp. 13-53. The Court undertook a thorough review of each potential juror discussed in Whatley's habeas petition and concluded that, "based on the state court's application of the law, the trial court's acceptance of the prosecutor's strike explanations, and comparisons of the stricken and seated jurors, it cannot be said that the state court unreasonably applied the facts in determining that Whatley failed to prove purposeful discrimination under *Batson*."  Doc. 21, p. 32.

Whatley disagrees with this outcome and devotes a majority of his Rule 59(e) motion to comparing several white jurors who served with several black panelists who were struck (Jurors T.P., O.J., A.P., B.D., C.A., and M.M.).  Doc. 23, pp. 10-26.  As to Jurors A.P., B.D., and C.A., the Court views Whatley's arguments to be repetitive of those in his habeas petition and sees no error of law or fact that warrants revisiting its analysis here.[4] As to Jurors T.P., O.J., and M.M., the Court addresses any new issues raised by Whatley and/or provides clarification as needed below. In the end however, Whatley has not shown any manifest errors of law or fact that would support changing this Court's ruling.

Before responding to the individual challenges of Jurors T.P., O.J., and M.M., the Court addresses two themes that recur throughout Whatley's Rule 59(e) motion. The first arises under *Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203, 170 L.Ed.2d 175 (2008), and the second under *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317, 162 L.Ed.2d 196 (2005).

First, Whatley seems to believe that under *Snyder* the trial court is only entitled to deference if it makes findings on the record specifically discussing and then individually accepting or rejecting every single strike explanation offered by a prosecutor.  Doc. 23, pp. 12, 16, 18. The Court cannot accept Whatley's view of *Snyder*.

---

[4]  Doc. 9, ¶¶ 39, 59, 71, 73-74, 78, 89, 91-92, 96 (as to Juror A.P.); Doc. 9, ¶¶ 46-48, 74, 79, 93-96 (as to Juror B.D.); Doc. 9, ¶¶ 38, 77, 97-98 (as to Juror C.A.).

In *Snyder*, the prosecutor struck all five prospective black jurors from the venire. In justifying his decision to strike one of those black jurors, the prosecutor offered two explanations, both of which were race-neutral: (1) that the juror looked nervous during *voir dire* and (2) that the juror—a student at the time—might return a faster, lesser verdict to avoid missing class. *Id*. at 478. Snyder challenged the strike under *Batson*, and the trial court denied the motion. *Id*. Snyder was convicted.

The Supreme Court reversed the conviction. In the Court's view, one of the two reasons the prosecutor gave for striking that juror—that he might vote for a lesser verdict to avoid missing class—was implausible under the facts in the record and, therefore, could not support the prosecution's exercise of a peremptory strike. *Id*. at 483. The other reason—that the potential juror was nervous—might have been an appropriate reason for the strike in the Court's view, but there was no evidence in the record that the judge actually made a determination about the juror's demeanor. *Id*. at 479. Because there was not sufficient evidence in the record to support the only non-pretextual strike explanation, the Supreme Court sent the case back to the state court to reconsider the *Batson* issue. *Id*. at 474.

The key issue in *Snyder* was whether a trial court is specifically required to make credibility findings on the record in cases where peremptory strikes are made based <u>solely on a juror's demeanor</u>. The *Snyder* court never said that every strike explanation had to be analyzed in detail in the record in order for the trial judge to be given deference. Whatley's argument seems to harken back to his theory that he is entitled to habeas relief because the Alabama courts did not show their work to his satisfaction. This Court already analyzed and rejected that idea, and *Snyder* does not disrupt that analysis.

Whatley's second recurring argument is based on *Miller-El v. Dretke* (*Miller-El II*), 545

U.S. at 231, and the flawed idea that a prosecutor is guilty of discrimination if there are any similarities between white jurors who serve and black jurors who do not.  Doc. 23, pp. 14, 17, 21. Whatley painstakingly walks through each juror trying to find any similarities between black and white veniremembers to show that this Court should have granted habeas relief.

The Court again disagrees with Whatley's analysis. The question is not whether there are any similarities, but whether there "are relevant differences between the struck jurors and the comparator jurors.'" Doc. 21, p. 31 (citation omitted). Even *Miller-El II* acknowledged this. *See Miller-El II*, 545 U.S. at 247 (acknowledging that the differences in that case were outweighed by the similarities). The Opinion and Order extensively analyzed the side-by-side comparisons offered by Whatley and found that any similarities were outweighed by relevant differences and no disparate treatment was shown.[5]

In short, Whatley's theories under *Snyder* and *Miller-El II* do not change this Court's mind about whether the Alabama courts erred in denying his *Batson* claims. Next the focus shifts to Whatley's alleged errors in the Court's analysis of Jurors T.P., O.J., and M.M.

**<u>Juror T.P.</u>**

Whatley's arguments related to Juror T.P. largely repeat arguments already resolved as part of his habeas petition and, therefore, are not properly before the Court on this Rule 59(e) motion. Doc. 9, ¶¶ 53-54, 81-84. The Court will clarify one point raised though.

---

[5] Whatley disputes this Court's reliance on *Parker v. Allen*, 565 F.3d 1258 (11th Cir. 2009), and *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005) simply because the underlying state court decisions were decided before *Miller-El II*. Doc. 23, n. 6. The timing of these cases does not undermine the legal premise they were cited to support, *i.e.*, that a prosecutor's mistaken belief about a juror is not in and of itself clear and convincing evidence of pretext.  Doc. 21, p. 45. This is still good law in this Circuit. *See Lee,* 726 F.3d at 1226 ("The conclusion that an honestly mistaken but race-neutral reason for striking a black venire member did not violate *Batson* was not unreasonable."); *King,* 69 F.4th at 871 (quoting *Lee* for the same proposition).

Whatley questions this Court's observation that Juror T.P.'s responses to the death penalty questions are "notably vague," which Whatley says was not one of the reasons the State gave for striking her.  Doc. 23, p. 11.  Whatley misunderstands the Court's analysis. The Court analyzed Juror T.P.'s statements about the death penalty, not to give an alternate reason for Juror T.P.'s strike, but as further support for State's strike based on Juror T.P.'s suggestion that only continual drug users or abusers or those who sell to children should be punished "to the full extent of the law." Doc. 21, pp. 53-55. Whatley's argument on this point, including his comparison of Juror T.P. to Jurors T.M., B.D., and B.R., does not change the Court's analysis.

**Juror O.J.**

Similarly Whatley's argument as it relates to Juror O.J. largely echoes arguments already raised in his habeas petition and, therefore, is not properly before the Court on this Rule 59(e) motion.  Doc. 9, ¶¶ 37, 39, 55-56, 85-88. Whatley raises two points that warrant clarification.

The first point relates to whether the record supported the State's reasons for striking Juror O.J. The State said it struck Juror O.J. because he had a brother-in-law with a drug problem "and he was very hesitant regarding the death penalty" during the individual interview.  Doc. 2-34, p. 34; Doc. 2-30, p. 3. This Court found adequate support in the record that the State viewed Juror O.J. as hesitant in his view of imposing the death penalty during *voir dire* and that neither defense counsel nor the trial court challenged the State's characterization of Juror O.J.'s response at the time of questioning. In the Court's view, based on the record, it was not unreasonable that the state court credited the prosecutor's strike explanation. Doc. 21, pp. 38-39.

Whatley now accuses this Court of "vastly overstat[ing] what the record actually shows." Doc. 23, p. 13. He suggests that Whatley only "paused briefly" before responding to questions about the death penalty and that he did so to "perhaps think about his response".  Doc. 23, p. 13. It

is Whatley who overstates what the record shows. There is nothing in the transcript that shows how long Juror O.J. paused or what his demeanor was at the time. Whatley's motion does not alter the Court's conclusion on this issue.

The second point that warrants discussion is Whatley's reiterated claim that Juror O.J. was treated differently from white juror S.G.  Doc. 23, p. 14. He says there is no support in the record for this Court's conclusion that Juror S.G. "never wavered [her] ability to impose the death penalty." Doc. 23, p. 14. The Court disagrees. As explained in the Opinion and Order, Juror S.G.'s situation is distinguishable because any hesitation she expressed was related to the proof necessary to impose a death sentence, not in her ability to vote for a death sentence.  Doc. 21, pp. 36-37. Whatley has not refuted the fact that the State struck all jurors (regardless of race) who were hesitant or had reservations regarding voting for the death penalty.  Doc. 21, p. 36 at n. 17. Finally, to the extent Whatley's arguments about Juror S.G. are related to her post-*voir dire* sentiments about serving, they are irrelevant to any *Batson* analysis.

**Juror M.M.**

Whatley raises two issues regarding the Court's analysis of Juror M.M. Each is addressed below.

First Whatley says this Court misread the record to indicate that Juror M.M. stood in opposition to the death penalty and that, in fact, she did *not* stand when the prosecutor asked who opposed the death penalty.  Doc. 23, p. 24. Upon further review of the *voir dire* transcript, this Court is inclined to agree with Whatley that Juror M.M. did not stand in response to the question about who opposed the death penalty. Rather, it seems the prosecutor moved to Juror M.M. to begin individually questioning her after the last standing juror sat down.  Doc. 2-2, p. 81.

Whatley's clarification of this particular issue does not change the Court's opinion that the

Alabama courts properly found the strike of Juror M.M. was not racially motivated. Regardless of whether Juror M.M. stood in response to the death penalty question, the record nevertheless shows that Juror M.M. gave inconsistent responses when asked about the death penalty, which is a valid reason for exercising a peremptory strike.

Next Whatley compares Juror M.M. to white Juror S.G. Whatley says this Court misinterpreted the record regarding white Juror S.G. because "S.G. *did* stand up during group voir dire…" when asked who was opposed to the death penalty. Doc. 23, p. 25. The Court did not overlook or misunderstand this part of the record. In fact, the Opinion and Order specifically acknowledged that Juror S.G. stood in response to the question and then was individually questioned by the prosecutor and the trial court to confirm that Juror S.G. had no hesitation voting for the death penalty if adequate evidence was shown. Doc. 21, p. 37. Whatley's comparison of Juror M.M. to Juror S.G. still does not upend the Alabama courts' decision that Whatley did not prove purposeful discrimination.

In sum, even considering the issues raised in Whatley's Rule 59(e) motion, this Court cannot say the Alabama Court of Criminal Appeals' decision to deny Whatley's *Batson* claims was either an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence before it. Whatley's motion to reconsider this portion of the Opinion and Order is denied.

**B.    Whatley has not presented any manifest errors of law or fact or newly discovered evidence that would support changing this Court's denial of his claims of ineffective assistance of counsel during the penalty phase of trial.**

Whatley's second ground for seeking relief under Rule 59(e) relates to his claim that he received ineffective assistance of counsel during the penalty phase of his trial. Specifically, Whatley maintains that his trial counsel failed to properly investigate Whatley's background and, as such,

the jury never heard relevant information about Whatley's childhood trauma and mental illness that he says might have led the jury to vote against the death penalty. Doc. 23, pp. 27-38. He challenges this Court's determination that he failed to prove his trial counsel's performance was deficient at the penalty phase or that he was prejudiced by trial counsel's performance.

### i. Whatley still fails to show his attorney's performance at the penalty phase was deficient.

Whatley urges the Court to reconsider whether his attorney's performance at the penalty phase was deficient under the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984). This argument, including Whatley's reliance on *Wiggins*, *Rompilla*, *Porter*, and *Sears*,[6] is largely a repeat of the arguments raised in his habeas petition. *Compare* Doc. 9, ¶¶ 3, 116-193 *with* Doc. 23, pp. 2, 26-38. The Court already addressed Whatley's ineffective assistance of counsel argument in its Opinion and Order and declines to readdress any repetitive arguments here. Doc. 21, pp. 78-129. However, Whatley does raise a few points that compel a response, and those points are addressed below.

Whatley first suggests this Court validated the ACCA's application of an incorrect legal standard to its review of his ineffective assistance claims. Doc. 23, p. 27. As far as the Court can tell, Whatley's argument flows from the simple fact that the ACCA did not cite the legal standard from *Wiggins* in its opinion. Doc. 23, p. 28. After considering Whatley's reasoning, the Court still concludes the ACCA correctly stated the law and correctly applied the legal standard. Doc. 21, p. 124. The ACCA expressly cited to *Strickland* and recognized that counsel's performance would be ineffective if "no competent counsel would have taken the action" that the attorney took. Doc. 2-

---

[6] *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L.Ed.2d 471 (2003); *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 162 L.Ed.2d 360 (2005); *Porter v. Singletary*, 14 F.3d 554 (11th Cir. 1994); *Sears v. Upton*, 561 U.S. 945, 130 S. Ct. 3259, 177 L.Ed.2d 1025 (2010).

55, p. 2. Furthermore, this Court separately analyzed Whatley's claims under *Strickland* and *Wiggins*, which Whatley acknowledges is the correct legal standard.

Next Whatley repeats his argument that his trial attorney failed to adequately meet and prepare mitigation witnesses before their testimony.  Doc. 23, p. 28. Whatley takes issue with the length and timing of the preparation, but the Court still finds adequate support in the record that trial counsel discovered and presented sufficient evidence of Whatley's background to satisfy the *Strickland* standard.  Doc. 21, p. 115-16. Whatley has not changed the Court's mind on these points.

Also back at issue is trial counsel's presentation of the mitigation evidence that he *did* uncover. Whatley maintains his attorney should have called Dr. Goff in addition to Dr. Morton to testify as to Whatley's mental illness.  Doc. 23, p. 30. This Court extensively reviewed the record and found that everything Dr. Goff would have testified to was made known to the jury through Dr. Morton.  Doc. 21, p. 114. Further, the Court saw no potential for prejudice from trial counsel's decision not to call Dr. Goff because the sentencing judge, even given all the evidence Dr. Morton put forth about Whatley's condition, found no statutory mitigating circumstances to exist. It is highly unlikely that cumulative evidence from Dr. Goff would have changed that result.  Doc. 21, p. 114. Whatley has not offered any contradiction to these conclusions.

> ii.   **Whatley still fails to show his attorney's performance at the penalty phase was prejudicial.**

Whatley next asks the Court to reconsider whether his trial counsel's performance was prejudicial under the second prong of *Strickland*.  Doc. 23, p. 30. Specifically, Whatley challenges this Court's conclusion that any additional mitigation evidence Whatley argues *should have* been presented would be cumulative to that which *was* presented to the jury, which was the same thing the ACCA ruled.  Doc. 23, pp. 30-31; Doc. 21, p. 84. He cites to *Skipper*, *Hinton*, *Porter*, and *Sears*,

all of which he already put before the Court in his original habeas petition.[7]  Doc. 9, ¶¶ 120, 124, 148, 160, 162-63, 166, 177-79, 181-82, 185, 187, 190. Much of the language from this part of the Rule 59(e) motion again is taken verbatim from the habeas petition. *Compare* Doc. 9, ¶¶ 178-79 *with* Doc. 23, pp. 31-32; Doc. 9, ¶ 180-182 *to* Doc. 23, pp. 32-33. These repeat arguments are not properly before the Court on Whatley's Rule 59(e) motion. *Linet*, 408 F.3d at 763. The Court addresses any new issues or provides clarification as needed below.

First, Whatley raises what he sees as an inconsistency in the Court's analysis on whether his trial counsel was ineffective in introducing evidence of his bipolar disorder. Doc. 23, p. 33. He says the Court, on one hand, believed that trial counsel had elicited sufficient testimony from witnesses about Whatley's severe mental health complications; then, on the other hand, said that same evidence was unpersuasive to the point that it need not be mentioned in the sentencing order. He suggests both things cannot be true. The Court disagrees.

Two separate issues are at play. When the Court was discussing trial counsel's presentation of evidence of Whatley's "serious severe complicated mental health problem," the focus of the analysis was whether Whatley's trial counsel was ineffective for failing to introduce additional evidence on this point, namely the testimony of Dr. Goff.  Doc. 21, pp. 111-115. In agreement with the Alabama courts, this Court concluded that any additional mitigation evidence on this point would have been cumulative, and that Whatley could not establish any prejudice from his trial attorney's decision not to introduce the additional mitigation evidence. Later, when dealing with an entirely separate issue—whether the trial court failed to consider mitigating circumstances in

---

[7] *Skipper v. South Carolina*, 476 U.S.1, 106 S. Ct. 1669, 90 L.Ed.2d 1 (1986); *Hinton v. Alabama*, 571 U.S. 263, 134 S. Ct. 1081, 188 L.Ed.2d 1 (2014); *Porter v. McCollum*, 558 U.S. 30, 130 S. Ct. 447, 175 L.Ed.2d 398 (2009), and *Sears v. Upton*, 561 U.S. 945, 130 S. Ct. 3259, 177 L.Ed.2d 1025 (2010)

violation of *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L.Ed.2d 973 (1978)—this Court concluded that the trial court had considered all mitigating circumstances offered by Whatley and found those circumstances unpersuasive to mitigate against a death sentence.  Doc. 21, pp. 130-139. There is no inconsistency here. Whatley's argument assumes that more mitigation evidence would been more persuasive to the sentencer. As this Court analyzed in its Opinion and Order, there was sufficient information before the judge and jury that Whatley suffered from severe mental illness; that information was just unpersuasive as a mitigating factor. In other words, whether the trial court considered this mitigation evidence is different from whether it accepted the evidence. Doc. 23, p. 133 (citing *Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992)) ("Although Atkins argues that the trial judge did not consider nonstatutory factors, it is more correct to say that the trial judge did not accept—that is, give much weight to—Atkins' nonstatutory factors. Acceptance of nonstatutory mitigating factors is not constitutionally required; the Constitution only requires that the sentencer consider the factors.").

Whatley next argues "this Court's suggestion that defense counsel put on such a strong mitigation case that Mr. Whatley could not have been prejudiced by their deficiencies is not supported by the record."  Doc. 23, p. 34. To support this contention, Whatley merely cites to his own habeas petition and to the trial court's finding that no mitigating circumstances existed to outweigh the death penalty sentence. Doc. 23, p. 34. Whatley offers no new argument or legal authority suggesting the Court made a mistake of law or fact, nor does he offer any new evidence for the Court to consider. His threadbare assertion that the Court should reconsider its ruling on this issue fails to meet the requirements of Rule 59(e).

Next Whatley challenges this Court's citation to *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995) and *Boldender v. Singletary*, 16 F.3d 1547 (11th Cir. 1994) for the proposition that evidence

of his traumatic childhood carried little mitigating weight because Whatley was an adult at the time of the offense. Doc. 21, pp. 93-94; Doc. 23, pp. 34-35). He says this Court ignored more recent caselaw from the United States Supreme Court on this subject, including *Porter*, 558 U.S. at 30. Doc. 23, p. 35. Whatley already made arguments under *Porter* to this Court, and Whatley's Rule 59(e) motion regurgitates much of this argument.  *Compare* Doc. 9, ¶ 185-88 *with* Doc. 23, p. 35). Furthermore, this Court cited to *Porter* several times in the Opinion and Order, so it is hard to understand Whatley's suggestion that *Porter* was ignored.  Doc. 21, pp. 69, 85 112, 125, 127. And perhaps most compellingly, the legal concept *Mills* and *Boldender* were cited for is still good law in this Circuit, as explained by the Eleventh Circuit just last year in *Pye*, 50 F.4th at 1047-48. There the Court said that it was not unreasonable for a trial court to give less mitigating weight to evidence about a defendant's childhood if he was an adult at the time of the offense. The Court distinguished *Porter*, stating that "neither [the defendant] nor the dissent points to anything in *Porter* that explicitly forbids courts from considering age as one factor among many in their prejudice analyses…" *Id*. Whatley's argument to the contrary fails.

Finally Whatley reasserts another argument made in his habeas petition—that the Alabama courts, and now this Court, failed to consider the totality of his mitigating evidence.  *Compare* Doc. 9, ¶¶ 190-193 *with* Doc. 23, pp. 36-38. Again Whatley offers no new evidence or legal authority to support this claim. He simply says this Court "repeat[ed] the error" of the Alabama courts. Without more, this bare assertion does not demonstrate that relief is warranted under Rule 59(e).

In conclusion, Whatley has not presented this Court with any grounds to change its ruling denying his habeas claims for ineffective assistance of counsel. This ground for relief in the Rule

59(e) motion is denied.[8]

**C.      Whatley has not presented any manifest errors of law or fact or newly discovered evidence that would support changing this Court's denial of his claim that evidence of future dangerousness was improperly considered.**

Whatley's next assignment of error relates to his claim that the sentencing judge improperly considered his potential for future dangerousness when sentencing him to death, which Whatley claims violated his rights to due process, a fair trial, and a reliable sentence under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.  Doc. 9, ¶¶ 4, 207-215; Doc. 23, pp. 2, 38-43. This argument was addressed in the Court's Opinion and Order.  Doc. 21, pp. 139-145.

To recap, Whatley's argument in his habeas petition was (1) that *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L.Ed.2d 894 (1964) prohibits a court from construing a criminal statute in an unexpected way; (2) that consideration of nonstatutory aggravating circumstances in capital sentencing is just the type of unexpected and impermissible statutory construction prohibited by *Bouie*; and (3) that, as such, the prosecution's introduction of evidence related to Whatley's future dangerousness (a nonstatutory aggravating factor in Alabama), and the sentencing judge's

---

[8] This Court acknowledges the recent opinion from the Eleventh Circuit Court of Appeals in *Williams v. State of Alabama*, Case No. 21-13734, 2023 WL 4446427, 2023 U.S. App. LEXIS 17540 (11th Cir. July 11, 2023) (unpublished), where an attorney's performance during the penalty phase of a capital trial was found to be deficient and prejudicial because the attorney failed to investigate the defendant's background for mitigating evidence. *Williams* is distinguishable from Whatley's case. In *Williams*, the defendant's attorney almost wholly failed to investigate his background, meaning the judge and jury never heard evidence of the defendant's childhood trauma, sexual abuse, abandonment issues, familial dysfunction, and other significant issues that could have supported mitigation. Contrastingly, Whatley's attorney did thoroughly investigate his background, and his judge and jury heard volumes of mitigation evidence, a point this Court analyzed extensively in the Memorandum Opinion and Order.  Doc. 21, pp. 86-111. *Williams* does not impact this Court's ruling on Whatley's failure-to-investigate claims.

supposed reliance on that evidence, was a violation of Whatley's constitutional rights.  Doc. 9, ¶ 207. The ACCA rejected this argument, and this Court found no error in that decision.

In this Court's assessment, after reviewing the State's evidence and argument in its entirety and in context of the entire trial, the prosecutor's complained-of remarks and submitted evidence did not urge the jury or the sentencing judge to impermissibly consider a nonstatutory aggravating circumstance to support a death sentence.  Doc. 21, p. 145. Instead, these remarks and evidence were used to show what weight the State's aggravating circumstances should be given when stacked against the mitigating factors put forth by the defense. Doc. 21, p. 145. The fact that the jury was properly instructed as to the statutory aggravating circumstances it *should* deliberate, none of which included future dangerousness, was additionally persuasive. Doc. 21, p. 145.

Whatley says a reconsideration is needed. He challenges the Opinion and Order on two grounds. First, he says it was wrong to conclude that future dangerousness bears on all sentencing recommendations, even if it is not a statutory aggravating circumstance. Second, Whatley disputes this Court's (and the ACCA's) determination that evidence of future dangerousness was relevant to rebut the defense's mitigation case. Each of these points is addressed below.

For starters Whatley claims this Court erred by ruling that future dangerousness "bears on all sentencing recommendations." Doc. 23, p. 39. In Whatley's view, because the Alabama legislature has not expressly included future dangerousness as a statutory aggravating circumstance, this Court "substituted the judgment of this Court for that of the Alabama legislature" by upholding the ACCA's determination that future dangerousness is still relevant to the sentencing recommendation overall. Doc. 23, p. 39.

In support of this position, Whatley contrasts Alabama with states like Texas, who has chosen to allow future dangerousness as a statutory aggravating factor, and Georgia, who has

explicitly permitted nonstatutory aggravating factors to be considered.  Doc. 23, p. 39. Alabama has taken a different path, Whatley says, because it has never legislated future dangerousness as an enumerated statutory aggravating factor. "The Alabama legislature could, if it chose to do so, add future dangerousness or the possibility of non-statutory aggravation to the list of aggravating factors," Whatley argues. Doc. 23, p. 39.

There are several fatal problems with this argument. First, Whatley has offered no binding or even persuasive legal authority to support this contention. Second, and more notably, Whatley's brief completely ignores Alabama Code § 13A-5-45, where the Alabama legislature *has* said that the sentencing hearing can include evidence of "*any matter* that the court deems relevant to the sentence" and "has probative value and is relevant to the sentence." ALA. CODE § 13A-5-45 (emphasis added). Both the trial court and the ACCA found evidence of Whatley's future dangerousness relevant and admissible under this statute, and this Court sees no basis to find that those rulings are contrary to, or unreasonable applications of, clearly established United States Supreme Court precedent, or constitute unreasonable determinations of the facts in light of the evidence presented.

Whatley next challenges this Court's conclusion that his future dangerousness was presented, not as an improper aggravating factor, but instead for determining "what weight should be afforded the aggravating circumstances that the State had proven." Doc. 21, p. 143; Doc. 23, p. 40. Whatley says his future dangerousness was not relevant to any of the three statutory aggravating factors in his case[9] and that, by admitting evidence of future dangerousness during the penalty

---

[9] The statutory aggravating factors charged in Whatley's case were (1) that Whatley was previously convicted of a felony involving the use or threat of violence to the person; (2) that the offense was committed while Whatley was engaged in the commission of a robbery; and (3) that the offense was especially heinous, atrocious, and cruel. (See Doc. 23, p. 40).

phase, the trial court essentially created a fourth, impermissible aggravating factor. Doc. 23, p. 40. The Court disagrees.

Both this Court and the ACCA relied on the United States Supreme Court's ruling in *Simmons v. South Carolina*, 512 U.S. 154, 114 S. Ct. 2187, 129 L.Ed.2d 133 (1994) to conclude that evidence of Whatley's future dangerousness was relevant to the sentencing determination. Doc. 21, pp. 140-43. Tellingly, Whatley never even acknowledges *Simmons* in his motion for reconsideration.

While Whatley ignores *Simmons*, he cannot avoid its impact. In *Simmons*, the Supreme Court acknowledged that it "has approved the jury's consideration of future dangerousness during the penalty phase of a capital trial" because that potential for dangerousness "bears on all sentencing recommendations." *Simmons*, 512 U.S. at 162. *Simmons* only requires that the jury be told the defendant will not be released from prison, which Whatley's jury was told. Doc. 21, p. 142-43. Furthermore, the fact that future dangerousness might not be outwardly related to the statutory factors for which Whatley was charged is not dispositive; future dangerousness is relevant in other ways, including Whatley's potential to be a threat to other persons while he is in prison, including prison guards and other prisoners.

Whatley's final argument on this issue disputes the opinion by the ACCA and this Court that evidence of Whatley's potential for future dangerousness was also relevant to rebut his mitigation circumstances. Doc. 23, p. 40. Whatley suggests that, because the State put in evidence of future dangerousness as part of its case-in-chief at the penalty phase and not strictly during its rebuttal to his case, that the evidence could not possibly be relevant to any mitigating circumstance. Doc. 23, p. 41.

Whatley's argument faces several hurdles. First, he ignores that the trial court ruled before

the penalty phase even began that future dangerousness was relevant to sentencing under Ala. Code § 13A-5-45 (broadly permitting evidence of any relevant matter).  *See* Doc. 23, p. 140. The State was not required to wait until rebuttal to introduce evidence of future dangerousness; the trial court had already permitted it. Second, the defense previewed in its opening argument that Whatley's religious conversion, which is reasonably related to his overall character and potential for future harm, would be at issue in the sentencing hearing. Doc. 2-14, pp. 3, 5. This further supports the idea that the State's evidence of future dangerousness was relevant to this mitigating circumstance from the start of the sentencing hearing. The correlation between Whatley's religious conversion and his potential for future dangerousness did not hang on whether the State waited for rebuttal to address it. Third, the record shows that the State anticipated the defense's use of Whatley's substance abuse issues to argue against imposition of the death penalty; the defense also previewed this issue in its opening argument at the penalty phase.  Doc. 2-13, p. 25; Doc. 2-14, p. 5. The Court sees no error in the State using evidence of Whatley's problematic behavior during incarceration, when he was presumably not on any substances, to rebut any suggestion from the defense that substance use was a reason for Whatley's criminal actions and that said use should mitigate against the death penalty. Finally, neither the ACCA nor this Court ever said that future dangerousness was only relevant because it was offered in rebuttal to the defense's mitigating circumstances; the analysis was given in addition to the key point that the evidence was already admissible under Ala. Code § 13A-5-45 and *Simmons*. Doc. 21, pp. 139-145.

After a careful reconsideration of this issue, the Court sees no grounds to change its ruling on this issue. The Alabama courts' determination that Whatley's future dangerousness as relevant was neither contrary to, or an unreasonable application of clearly established law. Nor was that decision based on an unreasonable determination of the facts in light of the evidence before the

court. Whatley is not entitled to Rule 59(e) relief on this claim.

**D.     Whatley has not presented any manifest errors of law or fact or newly discovered evidence that would support changing this Court's denial of his claim that the sentencing judge was improperly informed that the victim's family wanted Whatley to be sentenced to death.**

Next Whatley contends the State prosecutor improperly expressed to the sentencing judge that "each and every member" of the victim's family was "in favor of the death penalty," and that those statements alone violated *Booth v. Maryland*, 482 U.S. 496, 107 S. Ct. 2529, 96 L.Ed.2d 440 (1987) and *Payne v. Tennessee*, 501 U.S. 808, 111 S. Ct. 2597, 115 L.Ed.2d 720 (1991).  Doc. 23, p. 43. This issue was already raised in Whatley's habeas petition too. *Compare* Doc. 9, ¶¶ 216-221 *with* Doc. 23, pp. 2, 43-44.

In its Memorandum Opinion and Order, this Court gave two reasons for denying habeas relief. First, as reasoned by the state court and as supported by the record, the supposedly problematic statements were made to the judge and not the jury. Thus, *Booth* and *Payne* were not implicated. Second, the Court found no suggestion in the record that the sentencing judge considered the family members' opinions in imposing a sentence of death. Given these things, this Court declined to find that the Alabama court's decision was contrary to, or an unreasonable application of, clearly established law that would warrant a writ of habeas corpus.  Doc. 21, p. 147.

Whatley says this reasoning is flawed.  He reasons that because the judge was the ultimate sentencer under Alabama law at that time, the concerns of *Booth* and *Payne* exist just as they would if the statements had been made to the jury.  Doc. 23, pp. 43-44. Whatley offers no persuasive legal authority to support his position.

Whatley makes a passing reference to *Bosse v. Oklahoma*, 580 U.S. 1, 137 S. Ct. 1, 196 L.Ed.2d 1 (2016), seeming to imply that *Bosse* requires the Court to extend *Booth* and *Payne* to the statements made to the sentencing judge in his case.  Doc. 23, p. 44. This is an overbroad reading

of *Bosse*. The Supreme Court used *Bosse*, which involved statements made to a jury and not a judge, to clarify that its ruling in *Payne* had not altered the "prohibition on characterizations and opinions from a victim's family members about the crime, the defendant and the appropriate sentence…" 580 U.S. at 4. *Bosse* said nothing about extending that reasoning to statements made to a sentencing judge, and this Court declines to read *Bosse* in the broad way Whatley proposes.

As this Court already reasoned, there is nothing in the record to suggest that the sentencing judge was swayed by any statements from the prosecutor or by the victim's family members' opinions regarding the appropriate sentence. Doc. 21, p. 147. It is well settled that judges are presumed to know the law and to apply it in their decision making. *U.S. v. $242,484.00*, 389 F.3d 1149, 1155 (11th Cir. 2004) (discussing the role of a trial judge as fact finder and recognizing "the presumption that a judge knows and correctly applie[s] the law"); *see also Fautenberry v. Mitchell*, 515 F.3d 614, 638 (6th Cir. 2008) (recognizing that *Booth*'s concern was whether victim-impact evidence would distract or divert the jury and nothing "[t]hose considerations are severely diminished—if not entirely obviated—when the sentencer is a judge or a three-judge panel, rather than a lay jury.")

In conclusion, nothing in Whatley's Rule 59(e) motion gives the Court reason to disturb its ruling that the Alabama courts' adjudication of this issue was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

**E.   Whatley has not presented any manifest errors of law or fact or newly discovered evidence that would support changing this Court's denial of Whatley's claim that jurors were improperly informed that Whatley's case would be reviewed on appeal.**

Next Whatley reasserts he is entitled to habeas relief under *Caldwell v. Mississippi*, 472 U.S. 320, 328-329, 105 S. Ct. 2633, 86 L.Ed.2d 231 (1985), because the trial judge told the jury during *voir dire* that the case likely would be reviewed on appeal. Doc. 23, p. 44. Like Whatley's other

arguments, this one repeats his habeas petition. *Compare* Doc. 9, ¶¶ 222-227 *with* Doc. 23, pp. 2, 44-46.

This Court already rejected Whatley's arguments under *Caldwell*, concluding that "Whatley does not allege, and cannot show, that the objected-to statements by the trial judge were affirmatively misleading or otherwise inaccurate." Doc. 21, p. 149-50. Further, this Court noted, "any possible confusion this brief and isolated communication may have engendered was alleviated by the repeated emphasis of the entire proceeding that the jury, not the prosecutor, judge, or appellate court, was vested with the decision as to whether Whatley should live or die." Doc. 21, p. 150. Accordingly, this Court found no basis to question the ACCA's ruling rejecting this habeas claim. Doc. 21, p. 150.

Whatley questions this Court's citation to *Romano v. Oklahoma*, 512 U.S. 1, 9, 114 S. Ct. 2004, 129 L.Ed.2d 1 (1994), arguing again that his case should have the same outcome as *Caldwell*. Doc. 23, p. 45. Of initial note, this Court's Opinion and Order plainly cited *Romano* for the legal standard of a *Caldwell* violation, not to suggest that the case is identical to Whatley's. Doc. 21, p. 149. Whatley's insinuation that *Romano* was the reason why the Court ruled against him is misplaced. Furthermore, Whatley has already thoroughly advanced *Caldwell* in support of his position, and this Court in response provided its reasoning for why Whatley has not shown a *Caldwell* violation. Doc. 9, ¶¶ 222-227; Doc. 21, pp. 149-150. To the extent Whatley is simply reiterating his former argument, he fails to meet the burden of Rule 59(e). Finally, Whatley's motion to reconsider neglects to address this Court's determination that the objected-to statements by the trial judge were not affirmatively misleading or otherwise inaccurate, or that any possible confusion was alleviated by the repeated emphasis of the jury's role in the death penalty process. Given these things, the Court finds no grounds to modify its ruling on this issue.

**F.      Whatley has not presented any manifest errors of law or fact or newly discovered evidence that would support changing this Court's denial of Whatley's claim that the trial court erroneously refused to instruct the jury about lesser included offenses.**

Whatley's next argument refocuses on the trial court's decision not to instruct the jury on the lesser included offenses of felony murder, robbery as an afterthought, or the possibility of convictions for separate offenses of murder and robbery. Doc. 23, pp. 46-49. This issue was already raised in Whatley's habeas petition too; in fact, his Rule 59(e) motion on this point is largely a replica of his habeas petition. *Compare* Doc. 9, ¶¶ 233-234 *with* Doc. 23, pp. 2, 46-47. He again cites to *Beck*, *Spaziano*, *Hopper*, and *Jackson*,[10] all of which this Court has already reviewed and considered in ruling on the habeas petition. Doc. 21, pp. 154-160; Doc. 23, pp. 47-48.

As an initial matter, Whatley claims this Court was wrong to say *Beck* is inapplicable to his case. Doc. 23, p. 48. Again Whatley's argument on this issue is a reiteration from his habeas petition, *i.e.*, the idea that the jury should have been instructed that Whatley could be convicted of separate offenses for robbery and murder. Doc. 9, ¶ 238. Whatley does not attempt to distinguish *Schad v. Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L.Ed.2d (1991) or any of the substantive analysis of the Opinion and Order. The Court stands by its analysis of *Beck* and its progeny.

Whatley does raise one new concern the Court will address. He says, contrary to this Court's analysis, there is no requirement under Alabama law that a felony murder be accidental. Doc. 23, p. 47-48. Citing *Ex parte Jackson*, 674 So.2d 1365 (Ala. 1994), Whatley contends he was entitled to a felony murder instruction because "Alabama courts have approved giving felony murder instructions in cases, such as this one, where the defense theory is that the accused lacked intent due to intoxication." Doc. 23, p. 48.

---

[10] *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L.Ed.2d 392 (1980); *Spaziano v. Florida*, 468 U.S. 447, 104 S. Ct. 3154, 82 L.Ed.2d 340 (1984); *Hopper v. Evans*, 456 U.S. 605, 102 S. Ct. 2049, 72 L.Ed.2d 367 (1982); *Ex parte Jackson*, 674 So.2d 1365 (Ala. 1994).

The Court is still not persuaded. Whatley's citation to *Jackson*, a single case from almost thirty years ago, is not sufficient to overcome the thorough analysis in the ACCA's opinion (with which this Court agrees). As the ACCA noted, the Alabama Supreme Court in *Jackson* was not presented with the issue of whether the circuit court erred in instructing on felony murder or not. The *Jackson* court "merely commented in its opinion that a felony-murder instruction was appropriately given in that case based on the facts of the crime." *Whatley v. State*, 146 So.3d 437, 469 (Ala. Crim. App. 2010). Whatley has not acknowledged the sparse nature of his legal authority, nor has he attempted to distinguish the other cases where the Alabama courts have said felony murder is reserved for situations where an unintended death occurs as a result of the defendant's conduct. *See id*. at 469-71 (discussing cases). The Court declines to grant Rule 59(e) relief on this issue.

**G.      Whatley is not entitled to an evidentiary hearing.**

In the next section of his motion, Whatley claims he is entitled to an evidentiary hearing to prove his claims of ineffective assistance of counsel. Doc. 23, pp. 49-52. Notably, Whatley's habeas petition only asserted a right to an evidentiary hearing twice, both in cursory fashion. First, in Paragraph 198, Whatley said he "should have been granted an evidentiary hearing at which he would have offered evidence to support the claims asserted." Doc. 9, ¶ 198. Then in the "Prayer for Relief" Whatley summarily asked for a "full evidentiary hearing." Doc. 9, ¶ 277. Now he presents the Court with multiple pages of new legal argument. This is outside the scope of a Rule 59(e) motion.

Furthermore, even though Whatley's request for an evidentiary hearing was undeveloped in his habeas petition, this Court already considered and denied the request on the merits.  Doc. 21, pp. 192-94. And it was not a summary denial either. Whatley's request for an evidentiary hearing

was thoroughly analyzed under the AEDPA standard, and the Court concluded that Whatley had not met that standard; had not established either of the two exceptions to the standard; and had not proffered what evidence he would seek to introduce at a hearing. Doc. 21, p. 193. Whatley's Rule 59(e) motion does not meaningfully address the AEDPA standard, nor does he attempt to distinguish any of the cases cited in the Opinion and Order.

Instead Whatley likens himself to the petitioner in *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248 (11th Cir. 2016). Doc. 23, p. 50. Because his efforts to get an evidentiary hearing in state court were unsuccessful, Whatley says, he has never been afforded an opportunity to develop the factual basis for his ineffective assistance claims. Doc. 23, pp. 49-50. This Court is aware of *Daniel*; it was cited several times in the Opinion and Order. Doc. 21, pp. 68, 86, 89 at n. 35. Whatley's case is not like *Daniel* though.

In *Daniel*, the petitioner sought habeas relief in the district court in part based on his claim that his trial attorney had provided ineffective assistance of counsel at both the guilt and penalty phases of his capital trial. *Id.* at 1254. The district court denied the habeas petition without an evidentiary hearing but issued a certificate of appealability permitting the petitioner to seek review in the Eleventh Circuit Court of Appeals. On appeal, the Eleventh Circuit focused on whether trial counsel failed to adequately investigate and present mitigation evidence at the penalty phase of trial. *Id.*

As relevant in Whatley's case, the Eleventh Circuit remanded the case to the district court for an evidentiary hearing after finding that the "sentencing jury and judge heard none of [the] mitigation evidence" at issue and that the potential mitigation evidence brought to the attention of the habeas court "far exceeded anything the sentencing jury and judge were told." *Id.* at 1254. Several facts particularly caught the *Daniel* court's attention. First, Daniel's jury found him guilty

of capital murder, and the trial court attempted to start the sentencing hearing only five minutes later. *Id*. at 1255. When court-appointed defense counsel (who had replaced Daniel's first court-appointed attorney only months before the trial began) requested more time to prepare for the sentencing hearing, the trial court gave the defense a mere thirty minutes of additional time. *Id*. The defense called only one witness, the petitioner's mother. *Id*. Later, in a sentencing hearing before only the judge (which was the procedure in Alabama), the defense called only the petitioner's mother and his sister, both of whom simply asked the judge to spare Daniel's life. *Id*. Because of these overwhelming indicators that Daniel never had a chance to investigate or present mitigation evidence, the Eleventh Circuit permitted Daniel an evidentiary hearing in the district court to develop that mitigation evidence. *Id*. at 1280.

Whatley's case is different. Whatley was never prohibited from introducing his mitigation evidence. To the contrary, the Alabama courts and this Court both ruled that the evidence Whatley offered in his habeas petition had substantially been presented the sentencing judge and jury already and that further evidence would be cumulative. Unlike Daniel, even if everything Whatley said was true, the additional mitigation evidence he says should have been uncovered would still be cumulative. *Daniel* does not mandate granting Whatley an evidentiary hearing.

Whatley also asserts that *Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479, 146 L.Ed.2d 435 (2000) and *Porter v. Wainwright*, 805 F.2d 930 (11th Cir. 1986), support granting him an evidentiary hearing. Doc. 23, pp. 50-51. In Whatley's view, these cases entitle him to an evidentiary hearing because he "diligently pursued" his ineffective assistance of counsel claims in state court but was never given a hearing to develop those claims. The Court agrees that diligence might come into play if Whatley's request for an evidentiary hearing was denied solely because he did not develop his claims in state court. But that was not the only reason. Even though the Memorandum

Opinion and Order did not specifically state so, Whatley's request for an evidentiary hearing also failed for the fundamental reason that his claims lacked merit.

The burden is on a habeas petitioner to establish the need for an evidentiary hearing. *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318 (11th Cir. 2016). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id*. at 1319 (internal quotations omitted). Critically, "[t]hat means that if a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." *Id*. (quoting *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011)).

This reasoning further supports the Court's denial of Whatley's request for an evidentiary hearing. In denying Whatley's ineffective assistance claims on the merits, the Court looked extensively at every piece of evidence Whatley alleged his attorney should have introduced and, even if those things were true, still concluded that Whatley could not satisfy *Strickland*. No evidentiary hearing would change that. In other words, even if Whatley diligently pursued an evidentiary hearing in state court as he claims he did, that does not mean he is thereby *entitled* to such a hearing in federal court. It remains within this Court's discretion whether to hold a hearing, and that depends on whether the hearing could advance his potential claims. It would not. Whatley's request for an evidentiary hearing is denied.[11]

---

[11] Whatley's argument under *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L.Ed.2d 272 (2012) fails for the same reason. Doc. 23, p. 52. Simply put, Whatley's claim for ineffective assistance of counsel fails on the merits, and further development of his factual allegations through an evidentiary hearing would not change this result.

**H.     Whatley has not presented any manifest errors of law or fact or newly discovered evidence that would support changing this Court's denial of his request for a Certificate of Appealability.**

As an alternative to the arguments raised in support of his motion for reconsideration, Whatley renews his request for this Court to issue a certificate of appealability (COA) on his habeas claims.  Doc. 23, p. 3. Whatley argues he has "more than adequately shown that, at the very least, these and the other issues contained in his habeas petition are debatable." Doc. 23, p. 4.

This Court already addressed Whatley's request for a certificate of appealability in its Opinion and Order. Doc. 21, pp. 194-95. Whatley does not set forth any newly discovered evidence or intervening change in controlling law, nor does he demonstrate that the Court committed clear error of law or fact, or manifest injustice. Instead Whatley largely re-argues and re-litigates the same issues the Court already considered in denying his claims and COA. Whatley's renewed request for a COA is also denied.

### IV.   CONCLUSION

Based on the foregoing, the Court concludes that Petitioner Donald Dwayne Whatley's *Motion to Alter or Amend the Judgment* (Doc. 23) is **DENIED**.

**DONE** and **ORDERED** this the 7th day of August 2023.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE